# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **H.W.**

**No. 20-0164** (Harrison County 19-JA-184-2)

**FILED**

**September 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.W., by counsel Johnna L. Shumate, appeals the Circuit Court of Harrison County's January 29, 2020, order terminating her parental rights to H.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Jenna L. Robey, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period, finding that aggravated circumstances existed, terminating her parental rights, and denying her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, petitioner was the subject of child abuse and neglect proceedings with regard to three older children based upon her substance abuse. Petitioner was granted a six-month post-adjudicatory improvement period with a three-month extension, but eventually voluntarily relinquished her parental rights to those children at disposition.

The DHHR filed the instant child abuse and neglect petition against petitioner in October of 2019, following the birth of another child, H.W. According to the DHHR, petitioner gave birth to the child and, upon blood testing, the child tested positive for benzodiazepine and buprenorphine. The child also exhibited signs of drug withdrawal, including increased muscle tone

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

and tremors. Petitioner claimed that she was prescribed Subutex, a brand of buprenorphine, from an out-of-state treatment program in Maryland where she had "virtual appointments." Petitioner also admitted that she consumed a Xanax that had been prescribed to her in 2015 prior to her giving birth to H.W.

In November of 2019, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations contained in the petition. In addition to stipulating, petitioner acknowledged that she needed to address deficiencies in her parenting skills and her drug addiction, and she agreed to participate in intensive drug treatment, random drug screening, individual therapy, and parenting classes. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent.

The circuit court held a dispositional hearing in December of 2019. The DHHR presented the testimony of a DHHR worker, who recommended termination of petitioner's parental rights. The worker reported that petitioner was offered services such as supervised visitation, random drug screens, and parenting and adult life skills classes, although the intake for those classes had not yet been performed.[2] The worker also testified that petitioner missed one out of the two scheduled visits with the child. Additionally, petitioner tested positive for marijuana on several occasions and for methamphetamine on one occasion.

Petitioner testified that she "detoxed [her]self" after giving birth at the hospital and then entered a thirty-day inpatient treatment program designed for pregnant and postpartum women, which she successfully completed. Petitioner stated that, after her discharge from that program, she began participating in an intensive outpatient treatment program. Petitioner also testified that she was voluntarily taking classes at Life Choices, an organization which helps pregnant and postpartum women receive education and obtain necessary supplies for their infants. Petitioner conceded, however, that she attended only two classes at Life Choices while she was in the inpatient treatment program and one class since her discharge. Petitioner also admitted to using marijuana but denied using methamphetamine.

Petitioner presented the testimony of a case manager from the outpatient program she was attending and a volunteer from Life Choices. The case manager testified that petitioner had not missed any days, arrived on time, submitted to her drug screens, and participated in group sessions. The volunteer testified that the classes at Life Choices entailed watching a fifteen to thirty-minute video and filling out a worksheet. The volunteer described the classes as "completely client driven," meaning petitioner chose which and how many lessons she wanted to complete.

After hearing evidence, the circuit court found that petitioner continued to abuse drugs and was a habitual user such that her parenting skills were pervasively and seriously impaired. The circuit court further found that

> [a]ggravated circumstances exist as to [petitioner], upon the birth of the infant child . . . and are still present. There is no evidence . . . that there has been any change of

---

[2]Although not clear from the record, it appears that the intake had not yet been performed through no fault of petitioner's.

circumstances, or even efforts to change her circumstance, since [petitioner's] relinquishment and subsequent termination of her parental rights to her three (3) older children.

The circuit court also found that petitioner failed to fully avail herself of all the resources offered to her in order to correct the conditions of abuse that led to the filing of the petition and had not responded to or followed through with the appropriate and recommended treatment, services, or other rehabilitative efforts. Accordingly, the circuit court denied petitioner's motion for an improvement period and terminated her parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the January 29, 2020, dispositional order terminating her parental rights.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period.[4] Petitioner contends that she met her burden of proof in demonstrating that she was likely to fully participate in an improvement period. According to petitioner, she voluntarily participated in parenting classes through Life Choices, completed an inpatient

---

[3]The father's parental rights were also terminated below. The permanency plan for the child is adoption by a family member.

[4]In support of her argument, petitioner appears to take issue with the sufficiency of the family case plan filed by the DHHR. However, petitioner cites to no portion of the record demonstrating that she raised issue with or objected to the family case plan below. Accordingly, we will not address this portion of petitioner's argument, as we have previously held "'[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009).

treatment program, participated in supervised visitation, submitted to drug screens, and enrolled in an intensive outpatient treatment program. Petitioner also claims that she acknowledged her substance abuse and took steps to address it. Based upon her initiative to take classes of her own accord, petitioner contends that she demonstrated a substantial change in circumstances since her prior abuse and neglect case and that she should have been granted an improvement period. We disagree.

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Contrary to petitioner's argument, we find that she did not demonstrate that she was likely to fully participate in an improvement period. While petitioner points out that she attended parenting classes at Life Choices, the record demonstrates that there were over 100 classes available to petitioner, but she attended three classes—only one of which was after she was discharged from her inpatient treatment program. Further, petitioner attended only one supervised visit out of the two scheduled visits because she failed to comply with procedures for confirming the visits. Additionally, petitioner continued to test positive for drugs throughout the proceedings, including marijuana on several occasions and methamphetamine on one occasion. Moreover, the instant case was initiated only nine months after the disposition of petitioner's prior abuse and neglect proceedings, thereby demonstrating that petitioner had not made any substantial changes in her behavior despite the provision of numerous services through her improvement period in the prior case. Given this evidence, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Petitioner next argues that the circuit court erred in finding that aggravated circumstances existed in this case, thereby erroneously ensuring that the DHHR did not have to make reasonable efforts to reunify the family. Petitioner argues that aggravated circumstances did not exist as she previously voluntarily relinquished her parental rights, which resulted in a voluntary, not involuntary, termination. Petitioner also contends that her case did not fall into any of the other categories establishing aggravated circumstances set forth in West Virginia Code § 49-4-604(c)(7)(A). As such, petitioner argues that the DHHR should not have been relieved of its obligation to make reasonable efforts to preserve her family.

We find petitioner's argument to be without merit. While the circuit court made a finding of aggravated circumstances, it did not do so until disposition, which is functionally the end of the proceedings for petitioner's purposes. The record establishes that petitioner was provided with some services throughout the entirety of the proceedings, including supervised visits and random

4

drug screens. Moreover, petitioner completed the intake for parenting and/or adult life skills classes, which would have been provided had the proceedings continued. Therefore, the finding of aggravated circumstances had no effect on petitioner's receipt of services or any other aspect of the case. Accordingly, we find that the circuit court's finding of aggravated circumstances, if it was error, was harmless under the limited circumstances of this case and that petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in terminating her parental rights. Petitioner claims that the circuit court's finding that there was no reasonable likelihood that she could correct the conditions of abuse or neglect in the near future was erroneous because she participated in parenting classes at Life Choices, completed inpatient drug treatment, participated in supervised visitations, submitted to drug screens, and entered an intensive outpatient treatment program. Petitioner contends that, given this evidence, there was a reasonable likelihood that she could substantially correct the conditions of abuse and neglect. Petitioner also argues that the circuit court erred in refusing to impose a less-restrictive alternative to the termination of her parental rights. We disagree.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect either on her own or with help. As noted above, petitioner was granted a post-adjudicatory improvement period in her prior case and was provided with services aimed at correcting her issues with drug abuse. Petitioner was permitted to relinquish her parental rights at disposition in that case and thereafter continued abusing drugs during her pregnancy with H.W. such that the child was born with drugs in her system and exhibited signs of withdrawal. While petitioner completed a thirty-day inpatient treatment program following the child's birth and entered an intensive outpatient treatment program, she continued to test positive for marijuana and methamphetamine throughout the entirety of the proceedings. Moreover, petitioner missed one out of the two scheduled supervised visits with her child. While petitioner points out that she attended parenting classes of her own volition, the record demonstrates that two of the classes were attended through her inpatient treatment program and she attended only one more class on her own after she was discharged. Based on this evidence, we cannot find that the circuit court erred in finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future as petitioner demonstrated an inadequate capacity to solve her issues of abuse on her own or with help.

While petitioner claims that she should have been granted a less-restrictive disposition to the termination of her parental rights, we have previously held that

5

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights.

Petitioner lastly argues that the circuit court erred in denying her post-termination visitation with the child. According to petitioner, post-termination visitation with H.W. is in her best interests because she is placed in a home with one of her older siblings with whom petitioner enjoys visitation. We find petitioner's argument to be without merit.

We have previously held that

"[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). While it is true that petitioner enjoys contact with an older sibling in H.W.'s home, petitioner fails to cite to any evidence demonstrating that she has a bond with H.W. or that continued contact would be in the child's best interests. Accordingly, we find no error in the circuit court's decision to deny petitioner post-termination visitation with the child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 29, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison